LARRIMORE (GRAY v.). See Case No. 5,-721.

## Case No. 8,096.

### LARRIVIERE v. MADEGAN.

[1 Dill. 455.] [1]

Circuit Court, D. Minnesota. 1870.

PUBLIC LANDS—EJECTMENT—EQUITABLE TITLE.

1. The location of land with scrip, under and in compliance with the act of congress of July 17, 1854 [10 Stat. 304], passed the fee out of the United States, and was equivalent to a patent.

2. In ejectment, the defendant cannot, in the courts of the United States, set up an equitable title.

[See Baird v. Wolfe, Case No. 760.]

At law.

W. W. Phelps, for plaintiff.

S. L. Campbell, for defendant.

NELSON, District Judge. This is an action of ejectment. The property involved is the north-east quarter of south-east quarter of section nine (9), township one hundred and ten (110), west of range ten (10), containing forty acres of land according to the government survey, situated in what is known as the "Half-Breed Tract," in the state of Minnesota. The title is claimed by the plaintiff by virtue of a scrip location, under the act of congress of July 17, 1854, and by the defendant, by virtue of a pre-emption entry conferred under the act of congress of May

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

19, 1858 [11 Stat. 292], which is amendatory of the preceding act.

A special verdict was taken. It appears from this verdict that the plaintiff was a half-breed Sioux, and a beneficiary under the treaty of Prairie du Chien made in July, 1830. The ninth article of this treaty reads as follows: "The Sioux bands in council having earnestly solicited that they might have permission to bestow upon the half-breeds of their nation the tract of land within the following limits, to-wit: Beginning at a place called the Varn, below and near the village of the Red Wing Chief, and running back fifteen miles; thence in a parallel line with Lake Pepin and the Mississippi, about thirty-two miles, to a point opposite Beef or O-Beuf river; thence fifteen miles to the grand encampment opposite the river aforesaid: The United States agree to suffer said half-breeds to occupy said tract of country, they holding by the same title, and in the same manner that other Indian titles are held." 7 Stat. 330. In July 17 [10 Stat. 304], 1854, congress passed an act authorizing the president to exchange with half-breeds, beneficiaries of the foregoing treaty, for the tract of land described above, giving each of said half-breeds, certificates or scrip for the same amount of land each would be entitled to in case of a division of the reservation, pro rata, among the claimants, upon a full and complete relinquishment to the United States of all their right, title, and interest to the said tract of land. "Which said certificates or scrip" (in the language of the act) "may be located upon any of the lands within said reservation not now occupied by actual and bona fide settlers of the half-breed or mixed bloods, or such other persons as have gone into said territory by authority of law, or upon any other unoccupied lands subject to pre-emption or private sale, or upon any other unsurveyed lands, not reserved by government, upon which they have respectively made improvements: provided," etc.

In accordance with the provisions of this act of congress, the plaintiff, on the 27th of March, 1857, executed a relinquishment of his right, title, and interest in and to the said reservation, and received his certificate or scrip, and on the 11th day of August, 1857, at the Faribault land office, located scrip No. 87, B, for forty acres, upon the property in dispute, fully complying with the instructions of the general land office.

On the 19th day of May, 1858, congress passed an act amendatory of the act of July 17, 1854, as follows: "The act of July 17, 1854, is hereby amended, so that the body of land known as the 'Half-Breed Tract,' lying on the west side of Lake Pepin and the Mississippi river, in the territory of Minnesota, and which is authorized to be surveyed by the said act of 1854, shall be subject to the operation of the laws regulating the sale and disposition of the public lands; and

settlements heretofore made thereon are declared valid, so far as they do not conflict with settlements made by half-breeds; and that the settlers shall have the benefit of the pre-emption laws of the United States, any location of half-breed scrip thereon after the date of the settlement, notwithstanding, provided," etc. 11 Stat. 292.

The defendants settled upon the land located by the plaintiff on the 8th day of October, 1855, and under the act of May 19, 1858, effected a pre-emption entry on the 2d day of June, 1859, of the south-east quarter of section nine (9), township one hundred and ten (110), range ten (10), west, which embraced the forty acre tract aforesaid, and now claims a superior title to the plaintiff.

The principles involved in this case are not new. They have frequently engaged the attention of courts, and have been fully decided. The location of the land with the scrip, under the act of congress of July 17, 1854, passed the fee out of the United States, and vested it in the plaintiff as grantee. The scrip and application became the "instruments of title," and conferred upon him the legal title as effectually as could have been done by the issuing of a patent.

The defendant sets up an equitable title only, to-wit: a certificate of a pre-emption entry. In actions at law, the legal title must prevail, and the equities of the parties cannot be inquired into. The location with the scrip, being, in my opinion, equivalent to a patent, gives a better title than the pre-emption entry. See [Wilcox v. Jackson] 13 Pet. [38 U. S.] 516; [Irvine v. Marshall] 20 How. [61 U. S.] 566; [U. S. v. Hughes] 11 How. [52 U. S.] 568; [Darrington v. Bank of Alabama] 13 How. [54 U. S.] 24; 2 Johns. 84, 222. These authorities settle this case, as no equitable title can be set up in ejectment in opposition to the legal estate.

Judgment upon the special verdict is therefore given for the plaintiff. Judgment accordingly.